Guarantee Trust & Safe Deposit Company of Philadelphia, Trustee, etc., Appt., *v.* Charles E. Pennock et al.

Where the survivors of a partnership make an assignment of real and

NOTE.—For the jurisdiction of a court in equity to interfere when the title to property is in dispute, see note to Brush Electric Co.'s Appeal, *ante*, 37.

personal property for the benefit of creditors, their assignee will not be restrained by injunction from selling the property, at the instance of persons who claim that they are judgment creditors, not of the assignors but of a new partnership composed of the surviving members of the old firm and the executors of a deceased member.

In such a case the ownership of the property must be ascertained by law, without the interference of equity.

(Argued February 10, 1888. Decided February 20, 1888.)

January Term, 1888, No. 273, E. D., before PAXSON, GREEN, CLARK, and WILLIAMS, JJ. Appeal by plaintiff from a decree of the Court of Common Pleas of Chester County dissolving a preliminary injunction. Affirmed.

Bill in equity by the Guarantee Trust & Safe Deposit Company of Philadelphia, in behalf and as trustee of Robert Hare Powel, DeVeaux Powel, Henry Baring Powel, and John C. Bradley, copartners trading as Robert Hare Powel & Company, and Robert Hare Powel's Sons & Company, creditors, and also in behalf of such other creditors as may elect to intervene, against Charles E. Pennock, William Pennock, John S. Pennock, and Annie E. Pennock and Charles E. Pennock, executors of the will of Joseph L. Pennock, deceased, and Augustus Boyd.

The case was heard on bill and injunction affidavits.

The facts are set forth in the opinion of the lower court, which was as follows:

A preliminary injunction was awarded in this case without previous notice to the defendants.

It appears that C. E. Pennock & Company were the owners of iron works at Coatesville, Pennsylvania, where the business of manufacturing iron plates and other commodities had been carried on for a number of years.

On July 11, 1887, Joseph L. Pennock, one of the members of the firm, died; and on August 29, 1887, the surviving partners, three in number, made an assignment of the firm property for the benefit of creditors, to Augustus Boyd. The assignee entered upon the duties of his office, and advertised the works and other real estate of the firm for sale on the first of December, 1887.

On the day on which the assignment was made and delivered the firm of C. E. Pennock & Company gave a judgment note to

Robert Hare Powel & Company, for $203,000, which was entered at a subsequent hour of the day. On the same day Robert Hare Powel & Company assigned this judgment (among other things) to the Guarantee Trust & Safe Deposit Company of Philadelphia, for the benefit of the creditors. On October 28,. 1887, an execution was issued on this judgment, and the iron. works and other real estate referred to were levied upon.

The Guarantee Trust & Safe Deposit Company, the holder of this judgment, then filed a bill in equity, in which it set forth,. *inter alia,* that the firm of C. E. Pennock & Company had been dissolved by the death of Joseph L. Pennock, one of its members, and that, subsequently, another firm had been formed, bearing the same name, composed of the three surviving members of the old firm and the executors of Joseph L. Pennock, the deceased member; and that all the assets, estate, and effects of the old firm of C. E. Pennock & Company had passed to the new firm; that the judgment referred to was confessed after the formation of the new firm, and in the firm name, and became a lien on said real estate; that the assignment of C. E. Pennock & Company for the benefit of creditors was the act of the surviving members of the old firm, and that the assignee took no title by virtue of that assignment to the property of the old firm, as it. had passed to the new firm on its formation.

The plaintiffs ask that the assignee of C. E. Pennock & Company and the other defendants be restrained from selling the. iron works and real estate in question, and that it be decreed that they are the property of the new firm of C. E. Pennock & Company, and subject to the execution issued on the judgment of Robert Hare Powel & Company, before mentioned.

The defendants, by the injunction affidavits, deny that any new firm was formed, and assert that the property in question belonged to the firm existing previous to and at the death of Joseph L. Pennock, and, down to the time of the assignment to. Augustus Boyd for the benefit of the creditors, was owned by the survivng members of that firm, who assigned and conveyed all such firm property, and that the judgment to Robert Hare Powel & Company was confessed by the same firm, which had continued to carry on the business after the death of Joseph L. Pennock as before, to the time of the assignment; that the surviving partners considered that the will of Joseph L. Pennock authorized the continuance of business by the surviving partners,.

and they accordingly continued it; and that there was no agreement made at any time that his executors were to be admitted as copartners in the firm, and that they were not so admitted; that no new capital from any source was brought into the firm, and that the judgment to Robert Hare Powel & Company was entered after the assignment and is, therefore, no lien on the property assigned.

The question presented by the bill and injunction affidavits is whether the works and real estate in question belonged to the firm of C. E. Pennock & Company, the surviving members of which made the assignment to Augustus Boyd, in trust for creditors, or whether such property belonged, as alleged by the plaintiff, to a new firm bearing the same firm name, who made no assignment. If to the former, then Mr. Boyd, the assignee, can sell and convey a good title to the property, and a sale by execution on the judgment of Robert Hare Powel & Company would confer no title. If to the latter, then a purchaser at a sale on the execution would obtain a good title; and a sale by the assignee would confer no title.

We are asked to determine by these proceedings who is the owner of the property in question, and in the meantime to restrain the assignee of C. E. Pennock & Company and the other defendants from selling the same.

An examination of the authorities satisfies us that this is not a case where the courts of equity will interfere, but will leave the parties to establish their rights by proceedings at law. It is simply a question of ownership in property, whether it belongs to the firm of C. E. Pennock & Company, the surviving members of which made an assignment, or to an alleged new firm bearing the same name. To assume jurisdiction in such a case would be to rule that whenever the ownership of real estate is in question, the controversy will be determined in equity. The courts will not try the title to land in this form of proceeding. The proper remedy is ejectment.

Where a creditor levies on land which it is alleged the defendant in the judgment owns, or in which he has an interest, the courts will not as a rule stay his hand until the question of ownership or interest is determined. Any interest or supposed interest of a defendant in land may be sold by a judgment creditor, and its validity tested by ejectment. If the law were declared otherwise, its effect would be to abridge the right of trial

by jury. Where the title is undisputed or admitted, and a creditor is clearly and undeniably proceeding against right and justice to abuse the process of the law to the injury of another, then equity will intervene to stay his hand; but where the title is seriously disputed, the controversy can only arise and be determined by ejectment. Winch's Appeal, 61 Pa. 424; Reeser v. Johnson, 76 Pa. 313; Taylor's Appeal, 93 Pa. 21; Davis v. Michener, 106 Pa. 395; Small v. Greenough, 6 Sad. Rep. 467.

Where a judgment creditor desires to avoid an alleged fraudulent and voluntary conveyance of land by his debtor, his proper course is to levy on the land, buy the same at sheriff's sale, and bring an action of ejectment. He is not entitled to relief in equity, and cannot have a decree that the conveyance is fraudulent or void, and that the purchaser be restrained by injunction from conveying or encumbering the land. Girard Nat. Bank's Appeal, 13 W. N. C. 101.

Where the title to real estate is in dispute and there are special grounds for equitable relief, such as irreparable damage and the like, equity will interfere to prevent mischief pending litigation. Clark's Appeal, 62 Pa. 447; Bispham, Eq. § 460; Kerns v. Harbison, 1 Chester Co. Rep. 506, and cases there cited.

But if there be no equitable ground of relief involved, the rights of the parties must be determined at law without the interference of equity. When thus determined, or when they are admitted in the pleadings, or otherwise clearly appear, an equity based upon that right (superinduced by the acts of the parties) may be asserted and a decree for equitable relief made. Equity is thus not the means of establishing the legal right, but simply of giving adequate protection in the enjoyment of it when thus admitted or established. Washburn's Appeal, 105 Pa. 480.

In the case before us it may be thought desirable to have the question of ownership decided before the real estate is offered for sale, if there is room for a serious dispute in the matter— about which we give no opinion. The same difficulty, however, arises in every case where the ownership of land is in dispute, and either party desires to sell; and yet, as we have seen, the court will not, on that ground alone, restrain a sale of a supposed interest in land until the rights of ownership are determined. On the same principal the court will not restrain an assignee for the benefit of creditors from selling the property assigned to him, or the interest of his assignor therein, until it is ascertained

what interest he has, if any; and especially will this not be done at the instance of persons, as here, who claim that they are creditors by judgment, not of the assignors, but of a distinct party. The interest of the plaintiffs, as presented in their bill, are adverse to those of the assignee and the claim of creditors under the assignment; and we do not think they are in a position to ask that the assignee shall not, without delay, sell the premises or whatever rights his assignors have therein, for the benefit of their creditors.   On a consideration of the bill and affidavits we do not see any sufficient ground for the intervention of the equitable power of injunction, and the preliminary injunction heretofore issued is dissolved.

The assignments of error specified the action of the court in dissolving the preliminary injunction..

*Wm. W. Wiltbank, John J. Pinkerton,* and *Wm. Rotch Wister,* for appellant.—The privilege of a trustee to apply to a chancellor for advice and assistance, independently of statute, has always been recognized.   Hill, Trustees, 543; Bispham, Eq. § 147; Ashhurst v. Montour Iron Co. 35 Pa. 44.

This is especially true in cases of bankruptcy and insolvency, or of an analogous character.   *Re* Primrose, 23 Beav. 590.

Were the present appellant an assignee in bankruptcy it is believed that he could, upon petition, secure a resolution of the grave doubt in this case as a matter of course; and it seems difficult to believe that he may not do the same thing upon application to a court of equity in his technical character of assignee of insolvent firms, charged with the trust, under the statute, of making the most of the property at hand for the benefit of those for whom he acts.

*J. B. Townsend* and *John G. Johnson* for appellees.

Per Curiam:
As this is an appeal from an interlocutory order, no opinion is filed.

The decree is affirmed and the appeal dismissed, at the costs of the appellant.